# RECEIVED

MAY - 9 2011 ᴗᵧ⸱

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

JOSEPH HAWKINS                                    CIVIL ACTION NO. 6:10-CV-152

VERSUS                                            JUDGE DOHERTY

RICK COLEMAN, ET AL                               MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Currently pending before the Court is a Motion for Summary Judgment [Doc. 18] filed by the City of Abbeville; Mayor Mark Piazza, in his official capacity as Mayor of the City of Abbeville; Chief Rick Coleman, individually and in his official capacity as Chief of Police of the City of Abbeville; Officer Rusty Meaux, individually and in his official capacity as a police officer for the City of Abbeville; and Officer Shane Bourque, individually and in his official capacity as a police officer for the City of Abbeville (collectively referred to as "defendants"). In their motion, defendant's seek a summary judgment, "finding that defendants are entitled to judgment as a matter of law, and that defendants be awardd [sic] attorney's fees and expenses pursuant to 42 U.S.C.A. § 1988 for having to defend this frivolous claim."[1] [Doc. 18, p.4]

Plaintiff Joseph Hawkins brought this law suit seeking damages pursuant to 42 U.S.C. § 1983[2], arguing he was subjected to "excessive force," "cruel and unusual punishment," and

---

[1]42 U.S.C.A. § 1988(b) provides in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . ."

[2]"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." Collins v. City of Harker Heights, Tex., 503 U.S. 115,

1

deliberate indifference to his "serious medical needs," during and subsequent to his arrest for violation of a protective order. [Doc. 1, ¶ 13; Doc. 15, ¶13(a)] Plaintiff further alleges, "Defendants violated 42 U.S.C. § 1985 and 1986 by conspiring to deprive Joseph Hawkins of his civil rights and failing to prevent said conspiracy, deprivation and damages resulting there from [sic], respectively."[3] [Doc. 1, ¶15] Plaintiff additionally asserts defendants injured plaintiff "knowingly, intentionally, recklessly and/or negligently," in violation of La. Civ. Code arts. 2315 and 2316.[4] [Id. at ¶16] Finally, plaintiff asserts, "The City of Abbeville and Chief of Police, Rick Coleman, had and/or presently have customs, policies, practices and procedures of negligently and inadequately hiring, training, supervising and retaining police officers, particularly, Officers Bourque and Meaux." [Id. at ¶17]

The following facts are not in dispute[5]:

1.     A Louisiana Uniform Abuse Protection Order was issued on May 7, 2009, requiring the plaintiff, Joseph Hawkins to stay away from Amy Hawkins, his wife.

2.     On June 17, 2009, the plaintiff went to his brother's house, with the knowledge that his wife was employed at a neighboring house, and that she had been there earlier that day.

---

120 (1992).

[3]Section 1985 addresses "conspiracy to interfere with civil rights"; section 1986 provides a cause of action for neglecting to prevent a "conspiracy," as that term is defined in section 1985.

[4]La. Civ. Code art. 2315 provides in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

[5]See Doc. 26-1; see also LR 56.2 ("All material facts set forth in the statement [of uncontested facts] . . . will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.")

3.  Chad Frederick called the police to lodge a complaint that the plaintiff was violating a restraining order.

4.  Officers Shane Bourque and Rusty Meaux attempted to, and eventually did, arrest the plaintiff for violating the protective order.

5.  In the course of effectuating plaintiff's arrest, Officer Rusty Meaux deployed his taser, to prevent the plaintiff from fleeing.

6.  Plaintiff pled no contest to the charge of resisting arrest.

7.  Once plaintiff was successfully handcuffed, the officers' use of force stopped.

[Doc. 18-3 (citations to Exhibits omitted)]

## I.  Summary Judgment Standard

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. Proc. 56(a). As summarized by the Fifth Circuit in Lindsey v. Sears Roebuck and Co.,

16 F.3d 616, 618 (5th Cir. 1994):

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; see also, Moody v. Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

II.     **Qualified Immunity**

Chief Rick Coleman, Officer Rusty Meaux, and Officer Shane Bourque argue they are qualifiedly immune from this suit in their individual capacities. When a government official abuses

his office, an action for damages may be the only realistic avenue for vindication of a petitioner's constitutional guarantees. Anderson v. Creighton, 483 U.S. 635, 638 (1987). On the other hand, allowing suits for money damages against government officials "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Id. The jurisprudence has attempted to accommodate these conflicting concerns "by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id.

"Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." Id; see also Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997)("Qualified immunity shields government officials performing discretionary functions from civil damage liability if their actions were objectively reasonable in light of clearly established law.") "[Q]ualified immunity... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Rocha v. Schroeder, 283 Fed.Appx. 305, 306 (5th Cir. 2008). There is no immunity if no reasonably competent officer would have thought his conduct was lawful, "but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id.

In the Fifth Circuit:

When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, the plaintiff bears the burden of rebutting that defense. In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is

5

evidence to sustain a finding that the defendant's complained of conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and the defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity.

Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 301-302 (5th Cir. 2004) (citations and quotation marks omitted.) In the recent case of Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held the sequential two-step analysis discussed above is no longer mandatory. Id. at 821. Instead, lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Id. at 818. The Court noted, however, that the Saucier formulation often is the appropriate analytical sequence. Id.

### A.    Excessive Force

Plaintiff argues Officer Meaux's "repeated tasings" of plaintiff while attempting to place him under arrest, and Officer Bourque's failure to stop Officer Meaux from tasing plaintiff, constituted excessive force. [Doc. 26, p.3] Claims of "excessive force implicate the Fourth Amendment's proscription against unreasonable seizures." Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 845 (5th Cir. 2009)(citing Terry v. Ohio, 392 U.S. 1, 16, n.16 (1968)). "[A]ll claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989)(emphasis in original). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive

governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. Accordingly, plaintiff's claim of excessive force will be analyzed under the Fourth Amendment.[6]

A determination of whether "the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham at 396. As stated by the Supreme Court:

> Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

Graham v. Connor, 490 U.S. 386, 396-97 (1989) (emphasis added; internal quotations and citations omitted). In the Fifth Circuit, "the test for qualified immunity in the context of excessive force . .

---

[6]In his complaint, plaintiff asserts, "Defendant officers violated the Fourth, Eighth and Fourteenth Amendments of the United States Constitution . . . by using excessive force on Joseph Hawkins, far in excess of that required under the circumstances . . . ." [Doc. 1, ¶ 13] In that portion of plaintiff's memorandum in opposition to defendants' motion for summary judgment addressing his claim of excessive force, plaintiff is silent as to which portion of the Constitution he alleges was violated. [Doc. 26, pp. 3-6] Regardless, in light of the jurisprudence noted above, plaintiff's allegation of excessive force will be analyzed pursuant to the Fourth Amendment.

. requires (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999); *see also* Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 846 (5th Cir. 2009).

In this matter, a review of plaintiff's complaint [Doc. 1], his first supplemental and amending complaint [Doc. 15], and plaintiff's memorandum in opposition to the motion for summary judgment [Doc. 26] reveals plaintiff has not alleged he suffered any specific injury due to the incident at issue; rather, plaintiff merely states he "suffered from a physical injury." Merely stating one has suffered from some unidentified a physical injury is insufficient to support a claim of excessive force. *See e.g.* Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)(Although plaintiff "need not show a significant injury, he must have suffered at least some injury"); Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996); Williams v. Bramer, 180 F.3d 699, 704, n.3 (where there is no evidence in the record to substantiate alleged injuries for mental distress, embarrassment, mental anguish and humiliation, such injuries are not recognized by the court). As previously noted, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham at 396; *see also* Williams at 704 (plaintiff's alleged injuries consisting of fleeting dizziness, temporary loss of breath and coughing, which occurred when he was allegedly choked while a police officer searched his mouth for drugs, did not constitute cognizable injuries, for "[w]henever a detainee is physically searched by an officer, a physical confrontation inevitably results"). While one may infer from the filings plaintiff is alleging both the tasing incident itself and the removal of the taser barbs were painful incidents, again, he has not shown any

injury resulting therefrom which would be sufficient to rise to the level of excessive force.[7] *See e.g.* Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)(Because plaintiff suffered no injury, spraying him with a fire extinguisher did not constitute excessive force); Freeman v. Gore, 483 F.3d 404, 416-17 (5th Cir. 2007)(Allegations deputies "twisted [plaintiff's] arms behind her back while handcuffing her, 'jerked her all over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms," do not support an excessive force claim, as the injuries were "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest.")

Additionally, this Court finds the force applied was not objectively unreasonable. Plaintiff has provided no support (other than scant argument by counsel) for his position that the use of the taser under this set of facts constituted excessive force. At the time of the arrest, the police officers were responding to a complaint that plaintiff was in violation of a restraining order, which had issued due to domestic violence between plaintiff and his wife. As can be heard from the police videos, when approached by the officers, plaintiff immediately became loud and aggressive and refused to be placed under arrest. [Doc. 27, Ex. 1] As plaintiff admits, when the officers attempted to handcuff plaintiff, he pulled away. [Doc. 26, p.5; Doc. 27, Ex. 4, p.89] During the arrest, plaintiff's brother repeatedly yelled at the officers and acted in a hostile manner, causing the situation to escalate further and the police officers to fear violence might ensue. [Doc. 27, Ex. 3, pp. 25-6, 32-3, 434]

---

[7]With regard to removal of the taser barbs, the Court notes plaintiff testified at his deposition that it was he who removed the taser barbs [Doc. 27, Ex. 4, p.148]; whereas Off. Meaux testified at his deposition that he (*i.e.* Off. Meaux) was able to remove the probes himself (as opposed to taking defendant to the hospital), because he had "missed" his shot, such that none of the probes penetrated defendant's skin. (Officer Meaux testified one probe had fallen on the ground, and the other had woven through defendant's shirt sleeve.) [Doc. 27, Ex. 3, pp. 28-38, 40]

At the time of this incident, the Abbeville Police Department's use of force policy stated when making an arrest, officers were to first use presence, then verbal commands, then soft hand techniques, then the taser, then hard hand techniques, and finally, lethal force. [Doc. 18, Ex. K, p.58] In this matter, the officers used presence, then verbal commands, then soft hand techniques (*i.e.* each officer attempted to grab plaintiff by the arm to effectuate his arrest), followed by use of the taser. [Id. at 56-7] Plaintiff does not contest defendants' position that once plaintiff complied with orders to place his hands behind his back and submit to the arrest, the use of the taser ceased. Furthermore, plaintiff has put forth no evidence in support of his position that the use of the taser was not appropriate under these circumstances. Accordingly, the Court finds, under these circumstances, it was reasonable for a police officer to use a taser gun in order to restrain plaintiff, and therefore there was no violation of plaintiff's Fourth Amendment right to be free from an unreasonable seizure. In light of the foregoing, plaintiff's § 1983 claim of excessive force asserted against Officer Meaux, Officer Bourque and Chief Coleman, in their individual capacities, is DISMISSED. Additionally, as the Court has found plaintiff was not subjected to excessive force and has dismissed that claim, it necessarily follows that plaintiff cannot maintain an action pursuant to section 1985 (conspiracy to interfere with civil rights), or section 1986 (neglecting to prevent such a conspiracy). Accordingly, plaintiff's claims asserted against Officer Meaux, Officer Bourque and Chief Coleman, in their individual capacities, pursuant to 42 U.S.C.A. §§ 1985 and 1986 are DISMISSED WITH PREJUDICE.

### B. Deliberate Indifference

Plaintiff asserts a claim of "deliberate indifference," arguing his Eighth Amendment rights were violated when the arresting officers acted with deliberate indifference to a "serious medical

need." [Doc. 26, p.6] Under the circumstances presented in this matter, plaintiff's claim of "deliberate indifference" is properly analyzed pursuant to the procedural and substantive due process guarantees of the Fourteenth Amendment. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996)(en banc) (pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"); Wagner v. Bay City, Tex., 227 F.3d 316, 324 (5th Cir. 2000)("A pretrial detainee's constitutional right to medical care, whether in prison or other custody, flows from the procedural and substantive due process guarantees of the Fourteenth Amendment"); Ingraham v. Wright, 430 U.S. 651, 671, n.40 ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions). Thus, plaintiff's claim will be examined pursuant to the Fourteenth Amendment.

To demonstrate a constitutional violation, plaintiff must show the defendants "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Collier v. Mongomery, 569 F.3d 214, 219-20 (5th Cir. 2009); *see also* Mace v. City of Palestine, 333 F.3d 621, 625-26 (5th Cir.2003)(plaintiff must show defendants acted "with deliberate indifference to a substantial risk of serious medical harm and resulting injuries"). In this matter, plaintiff argues as follows:

> At the very least, they [Officers Meaux and Bourque] should have advised paramedics or emergency room staff of the tasing and received a medical release before transporting Joseph Hawkins to a detention facility. More so when Joseph Hawkins' Booking Sheet reveals that he suffered from epilepsy, fainting spells, high blood pressure, psychiatric disorders, and seizures and was contemplating suicide. (Exhibit 8).) Instead, Joseph was unceremoniously dumped in the pokey. It is mere fortuity that the incident did not result in a catastrophic medical situation.
>
> The serious medical need arose after the tasing. By not following the policies and procedures of the Abbeville Police Department, particularly in light of Joseph

Hawkins' suicideal ideation and easily aggravated preexisting conditions, Officers Meaux and Bourque were deliberately indifferent. Although they were in the best position to take action, they shirked that responsibility and tried to foist it on the detention facility. (Exhibit 3 and Exhibit 4.)

. . . .

When Joseph Hawkins was booked, he told officers Bourque and Meaux that he had a history of allergies, epilepsy, fainting spells, high blood pressure, psychiatric disorders, seizures, bipolar disorder, and that he was considering suicide. (Exhibit 8.) Although Joseph didn't ask for medical care, the escalating nature of these disorders should have put the officers on immediate notice. They owed a duty to prevent Joseph from the risk of committing suicide. The duty to protect arrestees extends to basic human needs, including reasonable safety. Surely the duty to protect would include responding to suicide threats. Ignoring such a threat seems indifferent to the risk of suicide.

[Doc. 26, pp.6-7 (footnote omitted)]

Plaintiff has put forth no evidence indicating that he asked for any type of medical attention, and by his counsel's own admission, plaintiff "didn't ask for medical care." [Id. at 7; *see also* Doc. 27, Ex. 2 (Off. Bourque testified plaintiff never requested that he be taken to a hospital), Ex. 4, p.107 (plaintiff is unable to remember much of his booking)] Officer Bourque testified an arrestee is automatically taken to the hospital by the arresting officers if the arrestee states he or she is hurt and needs to go to the hospital, if it appears to the arresting officers that an arrestee is injured, or if the arrestee states he or she is suicidal and exhibits any physical signs of having attempted to harm him or herself. However, if an arrestee merely states he or she is suicidal during the booking process, the booking officer passes that information on to the detention facility so that the proper precautions are taken by the detention facility.[8] [Doc. 27, Ex.2, pp. 38-48, 74-5] Officer Bourque further testified plaintiff exhibited no physical signs of having attempted to harm himself at the time of his arrest and

---

[8]Officer Bourque testified it is common for arrestees to state they are "crazy" and/or suicidal during the booking process. [Doc. 27, Ex. 2, p. 74]

booking. [Doc. 27, Ex. 2, p. 75] However, even were this Court to presume the arresting officers were deliberately indifferent to a substantial risk of serious medical harm, that would still not cure the fact plaintiff has alleged no resulting injuries. <u>Mace</u> at 625-26 (plaintiff must show the defendants acted "with deliberate indifference to a substantial risk of serious medical harm and *resulting injuries*" (emphasis added)). Because plaintiff has failed to identify any injury resulting from the police officers' alleged "deliberate indifference," he has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." <u>Lujan</u>, 487 U.S. at 884. Accordingly, plaintiff's claim made pursuant to 42 U.S.C.A. § 1983 for "deliberate indifference," asserted against Officer Meaux, Officer Bourque and Chief Coleman, in their individual capacities, is DISMISSED WITH PREJUDICE.

## III. Official Capacity Claims[9]

In his complaint, plaintiff states each defendant is being sued in both their individual and official capacities, with the exception of "The City of Abbeville."[10] Plaintiff asserts, "The City of Abbeville and Chief of Police, Rick Coleman, had and/or presently have customs, policies, practices and procedures of negligently and inadequately hiring, training, supervising and retaining police officers, particularly, Officers Bourque and Meaux." [Doc. 1, ¶ 17] Because the Court has found plaintiff's constitutional rights were not violated during the incident in question, it follows that neither the City, nor Mayor Piazza, can be liable to plaintiff. *See e.g.* <u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986); <u>Bustos v. Martini Club Inc.</u>, 599 F.3d 458, 467 (5th Cir. 2010). Accordingly,

---

[9]Plaintiff's memorandum in opposition to defendants' motion for summary judgment omits any discussion of the official capacity claims asserted in his complaint.

[10]As the City of Abbeville has no individual capacity, presumably, it is being sued in its official capacity.

all of plaintiff's official capacity claims (asserted against each defendant) are hereby DISMISSED WITH PREJUDICE.

## IV.    State Law Claims

Defendants additionally appear to seek a dismissal of plaintiff's claims asserted pursuant to state law.[11]   The Court declines to exercise supplemental jurisdiction over those claims, and accordingly, they are hereby DISMISSED WITHOUT PREJUDICE.  *See e.g.* Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999)("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims...*without* prejudice....")(emphasis in original).

## V.    Attorney's Fees and Expenses

In their motion, defendants argue "that the filing of this suit against them is frivolous and without foundation." [Doc. 18-2, p.32] Defendants thus request, "should this honorable Court determine that defendants are entitled to fees and costs under Section 1988, . . . that they be allowed an opportunity present evidence of the costs incurred in the defense of this frivolous lawsuit."[12] [Id.]

Pursuant to § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" in civil rights proceedings. *See* 42 U.S.C. § 1988(b). Congress passed this law, in large part, "to ensure 'effective access to the judicial process' for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quoting H.R.Rep. No. 94-1558, p. 1 (1976)). To that end, "the fee provision was included to 'make it easier

---

[11]Although not identified as claims for which defendants seek dismissal in their motion, defendants do ask the Court to dismiss plaintiff's state law claims in their memorandum in support thereof. [Doc. 18, Doc. 18-2, pp.30-31] Plaintiff makes no mention of his state law claims in his opposition to defendants' motion for summary judgment. [Doc. 26]

[12]While 42 U.S.C. § 1988 allows for recovery of attorneys' fees when certain conditions are met, it is Fed. R. Civ. P. 54 which allows for the recovery of costs. *See e.g.* 42 U.S.C. § 1988; Fed. R. Civ. P. 54; Fox v. Vice, 594 F.3d 423, 425-26 (5th Cir. 2010).

for a plaintiff of limited means to bring a meritorious suit.'" Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 420 (1978) (footnote omitted). However, by allowing attorney's fees to prevailing defendants, Congress also intended the provision "to deter the bringing of lawsuits without foundation," "to discourage frivolous suits," and "to diminish the likelihood of unjustified suits being brought." Id. (footnotes omitted).

As a result of these competing policy considerations, "the standard for awarding attorney's fees differs if a defendant rather than a plaintiff prevails." White v. Southpark Indep. Sch. Dist., 693 F.2d 1163, 1169 (5th Cir.1982). Typically, a prevailing plaintiff in a civil rights action is entitled to recover his reasonable attorney's fees, unless there is a showing of special circumstances that would make such an award unjust. See Dean v. Riser, 240 F.3d 505, 508 (5th Cir.2001). A prevailing defendant, on the other hand, may be awarded attorney's fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Id.; Hughes v. Rowe, 449 U.S. 5, 14 (1980)("The plaintiff's action must be meritless in the sense that it is groundless or without foundation."); Jones v. Texas Tech Univ., 656 F.2d 1137, 1146 (5th Cir. 1981) (To be without merit, a claim must be "so devoid of arguable legal merit or factual support as to be frivolous. . . .")

> When determining whether a claim is frivolous, unreasonable, or without foundation, a district court should consider (1) whether the plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the court held a full trial. In making these determinations, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. Instead, a court must ask whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.

Fox v. Vice, 594 F.3d 423, 427 (5th Cir. 2010)(footnotes, internal citations and quotation marks omitted). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient

justification for the assessment of fees." Hughes at 14. In the Fifth Circuit, "a defendant does not have to prevail over an entire suit in order to recover attorneys' fees for frivolous § 1983 claims." Fox at 428 (recognizing a circuit split, and adopting the foregoing jurisprudential rule in a matter where all state law claims were remanded after dismissal of all federal claims).

> The determination of a fees award is a two-step process. Rutherford v. Harris County, 197 F.3d 173, 192 (5th Cir.1999). First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. Id. The court should exclude all time that is excessive, duplicative, or inadequately documented. Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir.1993). Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). But see Perdue v. Kenny A., --- U.S. ----, 130 S.Ct. 1662, 1669, 176 L.Ed.2d 494 (2010) (limiting upward adjustments in light of "a strong presumption that the lodestar is sufficient"). The court must provide "a reasonably specific explanation for all aspects of a fee determination." Perdue, 130 S.Ct. at 1676.

Jimenez v. Wood County, Tex., 621 F.3d 372, 379-380 (5th Cir. 2010). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

Because there is insufficient information before the Court at this time to make the required findings for the imposition of attorneys' fees, the Court DEFERS on this issue at this time. However, defendants are hereby granted thirty days to file a motion supporting their position that they are entitled to attorneys' fees and costs, and the amount for which they claim they are entitled.

## VI. Conclusion

For the foregoing reasons, defendants' motion for summary judgment [Doc. 18] is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART. The motion is granted to the extent it seeks dismissal of plaintiff's federal claims; it is denied to the extent it seeks dismissal of plaintiff's state law claims; and it is deferred to the extent it seeks attorneys' fees and costs.

Defendants are to submit a motion supporting their position that they are entitled to attorneys' fees and costs, and the amount for which they claim they are entitled, within thirty days of issuance of this Ruling.

THUS DONE AND SIGNED this _____ 4 _____ day of May, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE